UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSEPH P. GUTIERREZ, | No. C 08-3906 SI (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| B. CURRY, | |
| Respondent. | |

## INTRODUCTION

This is a federal habeas corpus action filed by a pro se state prisoner pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is DENIED.

## BACKGROUND

In 1985, petitioner was convicted in a Los Angeles County Superior Court of robbery, kidnapping for the purpose of committing robbery, several counts of attempted robbery, and was sentenced to life in prison, plus nine years. (Ans., Ex. 1 at 1–2.) In 2007, the Board of Parole Hearings ("Board") found petitioner unsuitable for parole on grounds that he "would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." (Pet.,

Ex. A at 94.) In response to the Board's decision, petitioner sought, but was denied, relief on state collateral review. This federal habeas petition followed.

In reaching its decision, the Board considered the facts of two offenses committed on the same day,[1] kidnapping for the purpose of robbery. In November 1983, petitioner, in need of money, and his crime partner, McCord, entered a haircutter's, and petitioner pointed a loaded gun at one victim, who was McCord's former fiancee's mother, and said, "This is a hold up, I'm not kidding, she's a dead woman if you don't listen to me, I want all your money, jewelry, and everything you've got." The persons in the shop surrendered their valuables, and petitioner fled. (Id. at 12, 77.) Later that day, petitioner, armed with a loaded hand gun, entered the back seat of a vehicle in which were seated victims Selton and Lynn Stalmastr, while petitioner's accomplice, McCord, entered the vehicle and sat in the driver's seat. Petitioner pressed his gun to Selton's head, and said, "I got a gun to your head, and the lady to is going to get it, we just want your jewelry and money, do as we say and you won't get hurt," as McCord drove the vehicle. Petitioner and McCord robbed the victims and released them. (Id. at 11–12.) The Board found that petitioner committed these offenses in a cold, calculating manner, and for the trivial reason of greed. (Id. at 94.)

In addition to the circumstances of the commitment offenses, the Board cited as factors in its decision petitioner's criminal history, and his psychological report. Petitioner committed his first offenses, all relatively minor — shoplifting, possession of marijuana — in 1975 or so. In 1979, petitioner was convicted of conspiracy to defraud the U.S. government (check forgery), arson, and the unlawful possessions of explosives. (Id. at 29–30, 33.) Petitioner used the explosives to damage the trailer of a person who allegedly had stolen diamonds from petitioner. (Id. at 31.) Even though the trailer was destroyed, petitioner was charged only with possession of explosives, no witnesses being available. (Id. at 32.) In regard to the arson, petitioner conspired with another person to burn down that person's furniture store in order to collect the

---

[1] The Board thought the offenses occurred a few months apart, but petitioner asserted that they happened on the same day. (Id. at 13.)

insurance proceeds. (Id. at 34.) As a result of these convictions, petitioner served a term in federal prison from 1979 to 1982, during which he met his crime partner, McCord. (Id. at 14.) Petitioner and McCord planned the commitment offense in order to recover money supposedly owed to McCord by his former fiancee's mother. (Id. at 18–19). These facts, according to the Board, show that in performing the commitment offenses, petitioner transported a handgun across state lines, in violation of the terms of his parole. (Id. at 19.)

The Board also considered petitioner's behavior in prison. Of late, petitioner has had a favorable prison disciplinary record, his last serious disciplinary infraction occurring fourteen years ago. (Id. at 48.) His serious infractions did include one for violence and another for conspiracy to escape, petitioner being in possession of a hacksaw. (Id.) Petitioner's latest psychological report assessed him as presenting a low to moderate risk of future violence. (Id. at 88.) The report warned that substance abuse was "a risk factor," and that abstinence from drugs and alcohol "is a necessary and important goal for this man." (Id.)

The Board was troubled by petitioner's demeanor during the hearing. At one point, petitioner "started getting very aggressive and very argumentative," which in conjunction with "indications in prior psych reports," led two commissioners to think that petitioner could "explode at any time." (Id. at 99.) In light of all these factors, the Board concluded that petitioner posed an unreasonable threat to public safety and denied him parole. (Id. at 94.)

As grounds for federal habeas relief, petitioner alleges that the Board's decision violated his right to due process because it was not supported by some evidence.

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

## DISCUSSION

Petitioner claims that the Board's decision violated his right to due process because it was not based on "some evidence" that he currently poses an unreasonable risk to public safety. Due process requires that the Board's decision to deny a California prisoner parole be supported by "some evidence" of current dangerousness. Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010); see also Pearson v. Muntz, No. 08-55728, 2010 WL -- (9th Cir. May 24, 2010) (per curium). Accordingly, in reviewing federal habeas claims that a California prisoner was denied parole in violation of due process, courts must "decide whether the California judicial decision approving the governor's [or the parole board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable

4

determination of the facts in light of the evidence.'" Hayward, 604 F.3d at 562–63.

The commitment offense alone does not always provide evidence that a petitioner poses a current threat to public safety. Id. at 562. The offense does not establish current dangerousness "unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state" supports an inference of dangerousness. Id. (citing In re Lawrence, 44 Cal. 4th 1181, 1214 (Cal. 2008)).

Here, the record shows that there was "some evidence" to support the state court's approval of the Board's parole denial. First, there is some evidence to support the Board's determination that the offense was committed in an especially cold and callous manner and that the motive for the crime was trivial. Indeed, the circumstances surrounding the commitment offense show that petitioner committed the crimes with assurance and speed, and worked skillfully with a fellow accomplice to achieve his ends. Petitioner and McCord planned the crime well ahead of time, and petitioner, a felon under parole restrictions, transported a handgun across state lines to accomplish this goal. All this after petitioner had served a prior prison sentence, an indication that he did not benefit from his prior release on parole, or sufficiently reform or rehabilitate while incarcerated. Second, the record establishes that petitioner's pre- and post-conviction history support an inference of current dangerousness — his highly violent, criminal history, which in addition to the commitment offense, includes arson and possession and use of explosives. Further post-conviction evidence is provided by the psychological report which rates petitioner as presenting a low to moderate risk of future violence, a rating which, while not dispositive, does constitute some evidence of current dangerousness in addition to the commitment offense. See Hayward, 603 F.3d at 570–71 (Berzon, J., concurring). Taking the entire record into account, the Court cannot say that it was unreasonable for the Board to infer from petitioner's record of violence and misbehavior that if released, petitioner currently poses an unreasonable risk of danger to society, or a threat to public safety. In sum, the state court's approval of the Board's decision, therefore, was not an "unreasonable application" of the California "some evidence" requirement, nor was it "based on an unreasonable determination

of the facts in light of the evidence." Accordingly, petitioner's claim that the Board's decision was not supported by some evidence is DENIED.

## CONCLUSION

The state court's denial of petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals.

The Clerk shall enter judgment in favor of respondent, and close the file.

**IT IS SO ORDERED**.

DATED: September 30, 2010

SUSAN ILLSTON
United States District Judge